# EXHIBIT C

# Complaint

# Detroit Osteopathic Hospital Corporation
# v.
# United States of America



**Audit & Tax Services**

1 Ford Place, 5F
Detroit, MI 48202-3450
(313) 874-6994 Office
(313) 874-6989 Fax

*Via Certified Mail*
*Return Receipt Requested*

April 19, 2007

Internal Revenue Service Center
Cincinnati, OH 45999

Re: Form 843
Taxpayer: Detroit Osteopathic Hospital Corporation
EIN: ███████
Tax Periods: 2004 and Three Months Ended March 31, 2005

Dear Sir/Madam:

Enclosed please find Forms 843, Claim for Refund and Request for Abatement for Detroit Osteopathic Hospital Corporation for each quarter from January 1, 2004 to March 31, 2005.

If you have any questions regarding this matter, please contact me.

Sincerely,

J. Do[...]
Vice P[...]
Audit a[...]

Enclosu[...]

| Form **843** (Rev. November 2005) Department of the Treasury Internal Revenue Service | **PROTECTIVE** Claim for Refund and Request for Abatement ▶ See separate instructions. | OMB No. 1545-0024 |
|---|---|---|

Use Form 843 only if your claim involves (a) one of the taxes shown on line 3a or (b) a refund or abatement of interest, penalties, or additions to tax on line 4a.
Do not use Form 843 if your claim is for—
- An overpayment of income taxes;
- A refund for nontaxable use (or sales) of fuel; or
- An overpayment of excise taxes reported on Form(s) 11-C, 720, 730, or 2290.

| Name of claimant | Your SSN or ITIN |
|---|---|
| DETROIT OSTEOPATHIC HOSPITAL CORPORATION | |
| Address (number, street, and room or suite no.) | Spouse's SSN or ITIN |
| ONE FORD PLACE - 5F | |
| City or town, state, and ZIP code | Employer identification number (EIN) |
| DETROIT, MI  48202 | [redacted] |
| Name and address shown on return if different from above | Daytime telephone number (313) 876-8714 |

**1** Period. Prepare a separate Form 843 for each tax period
From  01/01/2004  to  03/31/2004

**2** Amount to be refunded or abated
$  1.00 *

**3a** Type of tax, penalty, or addition to tax:
[X] Employment   [ ] Estate   [ ] Gift   [ ] Excise (see instructions)
[ ] Penalty—IRC section ▶

**b** Type of return filed (see instructions):
[ ] 706  [ ] 709  [ ] 940  [X] 941  [ ] 943  [ ] 945  [ ] 990-PF  [ ] 4720  [ ] Other (specify)

**4a** Request for abatement or refund of:
[ ] Interest as a result of IRS errors or delays.
[ ] A penalty or addition to tax as a result of erroneous advice from the IRS.

**b** Dates of payment ▶

**5** **Explanation and additional claims.** Explain why you believe this claim should be allowed, and show the computation of your tax refund or abatement of interest, penalty, or addition to tax. If you need more space, attach additional sheets.

* This is a protective refund claim intended to suspend the statue of limitations. The total FICA taxes (plus interest) to be refunded for the period is far greater than $1.00. Please see attached Memorandum in Support of Protective Refund Claims. The tax return for the FICA taxes at issue was filed on or before the following January 31st. Accordingly, this refund claim is timely filed. See Code Section 6511(a) and Revenue Procedure 81-69, 1981-2 C.B. 726. Additional information relating to individual worker names and Social Security numbers can be provided upon request.

**Signature.** If you are filing Form 843 to request a refund or abatement relating to a joint return, both you and your spouse must sign the claim. Claims filed by corporations must be signed by a corporate officer authorized to sign, and the signature must be accompanied by the officer's title.

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete.

_[signature]_           Chief Financial Officer           4/18/07
Signature (Title, if applicable. Claims by corporations must be signed by an officer.)           Date

Signature           Date

BKA  For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.           Form **843** (Rev. 11-2005)
WK4B FD0100-001 21

| Form **843** (Rev. November 2005) Department of the Treasury Internal Revenue Service | **PROTECTIVE** Claim for Refund and Request for Abatement ► See separate instructions. | OMB No. 1545-0024 |
|---|---|---|

Use Form 843 only if your claim involves (a) one of the taxes shown on line 3a or (b) a refund or abatement of interest, penalties, or additions to tax on line 4a.
Do not use Form 843 if your claim is for—
- An overpayment of income taxes;
- A refund for nontaxable use (or sales) of fuel; or
- An overpayment of excise taxes reported on Form(s) 11-C, 720, 730, or 2290.

| Name of claimant | Your SSN or ITIN |
|---|---|
| DETROIT OSTEOPATHIC HOSPITAL CORPORATION | |
| Address (number, street, and room or suite no.) | Spouse's SSN or ITIN |
| ONE FORD PLACE - 5F | |
| City or town, state, and ZIP code | Employer identification number (EIN) |
| DETROIT, MI  48202 | ███████ |
| Name and address shown on return if different from above | Daytime telephone number (313) 876-8714 |

**1** Period. Prepare a separate Form 843 for each tax period
From   04/01/2004   to   06/30/2004

**2** Amount to be refunded or abated
$         1.00 *

**3a** Type of tax, penalty, or addition to tax:
[X] Employment   [ ] Estate   [ ] Gift   [ ] Excise (see instructions)
[ ] Penalty—IRC section ► _____

**b** Type of return filed (see instructions):
[ ] 706   [ ] 709   [ ] 940   [X] 941   [ ] 943   [ ] 945   [ ] 990-PF   [ ] 4720   [ ] Other (specify)

**4a** Request for abatement or refund of:
[ ] Interest as a result of IRS errors or delays.
[ ] A penalty or addition to tax as a result of erroneous advice from the IRS.

**b** Dates of payment ► _____

**5** Explanation and additional claims. Explain why you believe this claim should be allowed, and show the computation of your tax refund or abatement of interest, penalty, or addition to tax. If you need more space, attach additional sheets.

* This is a protective refund claim intended to suspend the statue of limitations. The total FICA taxes (plus interest) to be refunded for the period is far greater than $1.00. Please see attached Memorandum in Support of Protective Refund Claims. The tax return for the FICA taxes at issue was filed on or before the following January 31st. Accordingly, this refund claim is timely filed. See Code Section 6511(a) and Revenue Procedure 81-69, 1981-2 C.B. 726. Additional information relating to individual worker names and Social Security numbers can be provided upon request.

**Signature.** If you are filing Form 843 to request a refund or abatement relating to a joint return, both you and your spouse must sign the claim. Claims filed by corporations must be signed by a corporate officer authorized to sign, and the signature must be accompanied by the officer's title.

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete.

Signature _[signed]_     Chief Financial Officer     Date 1/18/07
(Title, if applicable. Claims by corporations must be signed by an officer.)

Signature _____     Date _____

BKA  For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.     Form **843** (Rev. 11-2005)
WK4B FD0100-001 21

| Form **843** (Rev. November 2005) Department of the Treasury Internal Revenue Service | **PROTECTIVE Claim for Refund and Request for Abatement** ► See separate instructions. | OMB No. 1545-0024 |
|---|---|---|

Use Form 843 only if your claim involves (a) one of the taxes shown on line 3a or (b) a refund or abatement of interest, penalties, or additions to tax on line 4a.

**Do not** use Form 843 if your claim is for—
- An overpayment of income taxes;
- A refund for nontaxable use (or sales) of fuel; or
- An overpayment of excise taxes reported on Form(s) 11-C, 720, 730, or 2290.

| Name of claimant | Your SSN or ITIN |
|---|---|
| DETROIT OSTEOPATHIC HOSPITAL CORPORATION | |
| Address (number, street, and room or suite no.) | Spouse's SSN or ITIN |
| ONE FORD PLACE - 5F | |
| City or town, state, and ZIP code | Employer identification number (EIN) |
| DETROIT, MI  48202 | ██-██████ |
| Name and address shown on return if different from above | Daytime telephone number |
|  | (313) 876-8714 |

**1** Period. Prepare a separate Form 843 for each tax period
From 07/01/2004 to 09/30/2004

**2** Amount to be refunded or abated $ 1.00 *

**3a** Type of tax, penalty, or addition to tax:
[X] Employment  [ ] Estate  [ ] Gift  [ ] Excise (see instructions)
[ ] Penalty—IRC section ►

**b** Type of return filed (see instructions):
[ ] 706  [ ] 709  [ ] 940  [X] 941  [ ] 943  [ ] 945  [ ] 990-PF  [ ] 4720  [ ] Other (specify)

**4a** Request for abatement or refund of:
[ ] Interest as a result of IRS errors or delays.
[ ] A penalty or addition to tax as a result of erroneous advice from the IRS.

**b** Dates of payment ►

**5** Explanation and additional claims. Explain why you believe this claim should be allowed, and show the computation of your tax refund or abatement of interest, penalty, or addition to tax. If you need more space, attach additional sheets.

\* This is a protective refund claim intended to suspend the statue of limitations. The total FICA taxes (plus interest) to be refunded for the period is far greater than $1.00. Please see attached Memorandum in Support of Protective Refund Claims. The tax return for the FICA taxes at issue was filed on or before the following January 31st. Accordingly, this refund claim is timely filed. See Code Section 6511(a) and Revenue Procedure 81-69, 1981-2 C.B. 726. Additional information relating to individual worker names and Social Security numbers can be provided upon request.

**Signature.** If you are filing Form 843 to request a refund or abatement relating to a joint return, both you and your spouse must sign the claim. Claims filed by corporations must be signed by a corporate officer authorized to sign, and the signature must be accompanied by the officer's title.

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete.

Signature (Title, if applicable. Claims by corporations must be signed by an officer.) — Chief Financial Officer — Date 4/18/07

Signature                                                                    Date

BKA  For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.    Form **843** (Rev. 11-2005)
WK4B FD0100-001 21

| Form **843** (Rev. November 2005) Department of the Treasury Internal Revenue Service | **PROTECTIVE** **Claim for Refund and Request for Abatement** ► See separate instructions. | OMB No. 1545-0024 |
|---|---|---|

Use Form 843 only if your claim involves **(a)** one of the taxes shown on line 3a or **(b)** a refund or abatement of interest, penalties, or additions to tax on line 4a.
**Do not** use Form 843 if your claim is for—
- An overpayment of income taxes;
- A refund for nontaxable use (or sales) of fuel; or
- An overpayment of excise taxes reported on Form(s) 11-C, 720, 730, or 2290.

<table>
<tr><td colspan="2">Name of claimant<br>DETROIT OSTEOPATHIC HOSPITAL CORPORATION</td><td>Your SSN or ITIN</td></tr>
<tr><td colspan="2">Address (number, street, and room or suite no.)<br>ONE FORD PLACE - 5F</td><td>Spouse's SSN or ITIN</td></tr>
<tr><td colspan="2">City or town, state, and ZIP code<br>DETROIT, MI  48202</td><td>Employer identification number (EIN)<br>38-1368308 (redacted)</td></tr>
<tr><td colspan="2">Name and address shown on return if different from above</td><td>Daytime telephone number<br>(313) 876-8714</td></tr>
<tr><td>1</td><td>Period. Prepare a separate Form 843 for each tax period<br>From    10/01/2004    to    12/31/2004</td><td>2  Amount to be refunded or abated<br>$             1.00 *</td></tr>
</table>

**3a** Type of tax, penalty, or addition to tax:
  [X] Employment   [ ] Estate   [ ] Gift   [ ] Excise (see instructions)
  [ ] Penalty—IRC section ► _____
**b** Type of return filed (see instructions):
  [ ] 706  [ ] 709  [ ] 940  [X] 941  [ ] 943  [ ] 945  [ ] 990-PF  [ ] 4720  [ ] Other (specify)

**4a** Request for abatement or refund of:
  [ ] Interest as a result of IRS errors or delays.
  [ ] A penalty or addition to tax as a result of erroneous advice from the IRS.
**b** Dates of payment ► _____

**5**  **Explanation and additional claims.** Explain why you believe this claim should be allowed, and show the computation of your tax refund or abatement of interest, penalty, or addition to tax. If you need more space, attach additional sheets.

* This is a protective refund claim intended to suspend the statue of limitations. The total FICA taxes (plus interest) to be refunded for the period is far greater than $1.00. Please see attached Memorandum in Support of Protective Refund Claims. The tax return for the FICA taxes at issue was filed on or before the following January 31st. Accordingly, this refund claim is timely filed. See Code Section 6511(a) and Revenue Procedure 81-69, 1981-2 C.B. 726. Additional information relating to individual worker names and Social Security numbers can be provided upon request.

**Signature.** If you are filing Form 843 to request a refund or abatement relating to a joint return, both you and your spouse must sign the claim. Claims filed by corporations must be signed by a corporate officer authorized to sign, and the signature must be accompanied by the officer's title.

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete.

_[signed]_____   Chief Financial Officer    4/13/09
Signature (Title, if applicable. Claims by corporations must be signed by an officer.)    Date

_____                              _____
Signature                                                           Date

BKA  For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.        Form **843** (Rev. 11-2005)
WK4B FD0100-001 21

# MEMORANDUM IN SUPPORT OF PROTECTIVE REFUND CLAIMS
## 2004 through March 31, 2005

Detroit Osteopathic Hospital Corporation ("DOHC") respectfully requests a refund of both the employer and employee portions of the Federal Insurance Contributions Act ("FICA") taxes that it overpaid from January 1, 2004 through March 31, 2005, plus interest. These taxes were paid on payments made to medical residents and fellows who were students working at DOHC during the years 1996 - 2005. DOHC believes that the payments made to these individuals were incorrectly treated as taxable for FICA tax purposes. Parts I and II of this memorandum discuss certain procedural issues, including the status of this claim as a protective refund claim. A brief statement of facts relating to the claims for refund reflected on the attached Form 843 for each of the quarters from January 1, 2004 through March 31, 2005 is set forth in Part III of this memorandum. Part IV of this memorandum contains a brief legal discussion explaining why a refund of the employer and employee portions of both the Social Security and Medicare taxes is required.

## I.   PROTECTIVE CLAIMS

Only $1 is claimed per quarter since this claim is being filed as a protective refund claim. A claim is generally submitted as a "protective" claim because the taxpayer seeks to avoid the burden of submitting all supporting evidence until the strength of its claim is clarified by anticipated IRS regulations, IRS rulings, or the resolution of pending litigation. Thus, in these situations it is in the mutual interests of both sides to delay action on the claims. This rationale is discussed more thoroughly in General Counsel Memorandum 38786. GCM 38786 states in relevant part the following:

> When the results of pending litigation may significantly clarify whether a refund should be allowed, the interests of both the Service and the taxpayer may be served by delaying action on the claim. If the Service were instead to act quickly and disallow the claim, the taxpayer might be compelled to file a refund suit at an earlier time because Section 6532(a) provides for a limitations period of two years from the date the claim is disallowed. When there is a substantial possibility that the pending litigation will resolve whether the taxpayer is entitled to a refund, [the National Office] sees no reason why action on the claim should not be delayed as long as reasonably possible. Thus, [the National Office] believes that such a "protective" claim may be held in abeyance until the pending litigation is resolved.

Neither the statute nor the regulations require the Service to act expeditiously on such a protective claim nor prohibit it from doing so. Because the Service has no legal obligation to act on a refund claim within any specific time period, it has been long recognized that the Service can legally delay action indefinitely and should consider

doing so in appropriate circumstances. In a similar fashion, taxpayers have a certain amount of discretion when filing refund suits. i.e., Code Section 6532(a) allows a taxpayer to bring a refund suit if the Service fails to respond within six months to an administrative claim for refund. DOHC believes that a delay is mutually beneficial because the clarification of this issue by the courts or the IRS National Office may result in FICA tax refunds on this issue. Therefore, DOHC respectfully requests that this be treated as a protective refund claim pending future guidance.

## II.   EMPLOYEE CONSENTS

DOHC is filing the refund claims on its own behalf, as well as on the behalf of its medical residents and fellows. As part of this administrative refund claim, DOHC will seek and retain the written consents of the affected workers, whereby each medical resident and fellow: (1) authorizes DOHC to apply for this refund, (2) states whether he or she has previously claimed a refund or credit of the over collected FICA taxes (and if such a claim has been filed, whether it has been denied), and (3) confirms that the medical resident or fellow will not claim any additional refund or credit with respect to these FICA taxes. In signing the consent, the resident or fellow authorizes DOHC to file a claim for refund on his or her behalf. These consents will be timely obtained in accordance with the applicable Treasury regulations, but need not be obtained prior to filing this administrative refund claim.

Treasury regulation Section 31.6402(a)-2(a)(2) requires an employer seeking a refund of the employee portion of FICA taxes to certify employee repayment or consent. More specifically, the regulation provides:

> Every claim filed by an employer for refund or credit of employee [FICA] tax...collected from an employee shall include a statement that the employer has repaid the tax to such employee or has secured the written consent of such employee to allowance of the refund or credit.

Although the regulation specifies that the claim "shall include" certification, the regulation does not specify when the employer must provide the certification. On its face, the regulation neither requires nor prohibits including, the certification at the time of filing an administrative refund claim. Thus, Section 31.6402(a)-2(a)(2) does not impose a deadline for certification, much less a jurisdictional requirement.

The Federal Circuit Court of Appeals specifically ruled that an employer need not repay its employees or secure their consent before filing a refund suit for overpayment of the employee portion of employment taxes. *Chicago Milwaukee Corp. v. United States*, 40 F.3d 373 (Fed. Cir. 1994) *rev'g* 29 Fed. Cl. 777 (1994).[1] Requiring otherwise before the

---

[1] The IRS has stated it views the specific certification requirement at issue here as non-jurisdictional. IRS General Counsel Memorandum 38,786 1981 IRS GCM Lexis 22 (Aug. 13, 1981). The General Counsel Memorandum noted that certification is "merely supporting evidence, which does not have to accompany the claim but which must be presented to the [IRS] before the [IRS] can actually issue a refund."

2

filing of an administrative refund claim "imposes a harsh burden without good reason." In fact, the Federal Circuit now maintains that these consents need not even be obtained before the court issues its decision, but must only be obtained prior to the taxes actually being refunded.

### III.    STATEMENT OF FACTS

As part of its workforce in from January 1, 2004 through March 31, 2005, medical residents and fellows performed services for DOHC on both a part-time and full-time basis. As part of their educational and certification requirements, these medical residents and fellows supplemented DOHC' full-time workforce while at the same time supplementing their own financial needs as students. DOHC treated these student workers as common law employees and paid full FICA taxes on the amounts paid to these individuals. This tax treatment was implemented due to the well-publicized audit position maintained by the Service regarding student workers.

Although DOHC did not necessarily concur with the narrow interpretation given to the student FICA tax exemption, it nonetheless withheld and paid both the employer and medical resident and fellow portion of the FICA taxes. However, based upon a series of events, DOHC has reconsidered its position as to FICA taxes on amounts paid to medical residents and fellows during this time and is now seeking a refund.

### DOHC' Residents are "Students" and as such are Excluded from FICA Taxation

In *United States v. Mayo Foundation for Medical Education and Research,* 2003 U.S. Dist. LEXIS 13603(D. Minn. Aug. 4, 2003), payments made to medical residents were found to be exempt from FICA taxes. DOHC finds its medical residents to be similarly situated.

In *State of Minnesota v. Apfel,* 151 F.3d 742 (8th Cir. 1998), the United States Court of Appeals for the Eighth Circuit affirmed a district court decision that the State of Minnesota was not liable for FICA taxes on the stipend amounts paid to medical residents. More specifically, the district court granted summary judgment on behalf of the state on the alternative grounds that (i) the medical residents were not employees for purposes of Social Security coverage under a Section 218 Agreement and (ii) even if the residents were employees under the agreement's terms, they were excluded from coverage under the agreement's "student exclusion" which paralleled the broader student FICA exclusion.

### Stipends Paid to DOHC Residents are Fellowship Grants that are Not Subject to FICA Taxation

Scholarship or fellowship grants are not subject to social security taxation. In determining whether a stipend qualifies as a scholarship or a fellowship grant under

3

Internal Revenue Code Section 117, courts have utilized the "substantial quid pro" test and the "primary purpose" test.

*Substantial Quid Pro Test*
The question of whether a stipend received by a resident constitutes a scholarship or fellowship grant is a question of fact. The Supreme Court developed the "substantial quid pro test" in *Bingler v Johnson*, 394 U.S. at 758, to ascertain whether an award is a scholarship or fellowship grant or a payment of compensation. The quid pro test examines whether the award is a <u>disinterested act of the grantor</u> or whether it is a bargained-for-consideration between the grantor and the recipient.

Medicare provides DME payments and IME adjustments to institutions with approved graduate medical education programs. Medicare provides these payments to support educational activities. These payments to member hospitals for graduate medical education entirely support their residency training programs. Thus, it is DOHC' position that Medicare effectively is the grantor of the stipends paid to its residents through payments made to Henry Ford Bi-County Hospital.

Medicare expects no services from the residents when making the payments which cover the residents' stipends. Nor does Medicare provide these funds with the expectation that the residents will provide services to the Federal government in the future. Rather, the payments made by Medicare are <u>disinterested and non-compensatory in nature</u>. As such, it is DOHC' position that stipends paid to its residents qualify as scholarships and grants under the "substantial quid pro test".

*Primary Purpose Test*
The courts through the years have also utilized the "primary purpose test" to determine whether particular awards qualify as scholarships or fellowship grants. Based on Treasury Regulation Sec. 1.117-4(c), the test involves an examination of the facts to ascertain the primary purpose of the grant. In making the determination of whether the grant constitutes a scholarship or fellowship grant, the courts have focused on whether the grant was intended to further the education and training of the recipient or to merely benefit the grantor. If the primary purpose of the grant is to benefit the grantor, the grant does not constitute a scholarship or fellowship grant.

At DOHC, the attending physician works less efficiently due to time spent educating, supervising and counseling the residents. As such, it is DOHC' position that the primary purpose in providing residency programs is to further the education and training of the residents rather than employ their services, and therefore stipends paid to its residents qualify as fellowship or scholarship grants under the "primary purpose" test.

**DOHC' Research Training Stipends are Fellowship Grants that are Not Subject to FICA Taxation**
Under a series of rulings issued by the Service, the Service has determined that stipends paid to research fellows involved in training programs designed to improve

4

their research skills do not represent compensation for services within the meaning of section 117(c) of the Code, and therefore are exempt from FICA.

The primary purpose for the establishment of the research training programs at DOHC is to train and educate individuals in medical research. The purpose of the stipend amounts given is to defray the cost of living and to enable the research fellow to pursue a course of study preparatory to a career in medical research.

### Summary
Accordingly, based on the court ruling in *United States v. Mayo Foundation*, the current holdings in *State of Minnesota v. Apfel,* 151 F.3d 742 (8th Cir. 1998), and the Service rulings regarding payments to research fellows, DOHC respectfully requests Social Security and Medicare tax refunds from January 1, 2004 through March 31, 2005 on behalf of itself and its affected medical residents and fellows.

## IV.   APPLICATION OF LAW

Sections 3101 and 3111 of the Internal Revenue Code ("Code") impose FICA taxes on all the wages paid to an employee by an employer during the calendar year. From January 1, 2004 through March 31, 2005, taxes were imposed at a rate of 12.4% for Social Security (OASDI) (divided equally between the employer share and the employee share) up to the wage tax base, plus a rate of 2.9% for Medicare (divided equally between the employer share and the employee share) on all wages, regardless of the amount. Section 3121(a) defines the term "wages" for FICA tax purposes as all remuneration for "employment," with certain limited exceptions. Important exceptions to the definition of "wages" and "employment" have been identified over the years under which payments are treated as excludable from FICA taxation. The courts have recognized such exclusions even though they are not specifically set forth in either the Code or the regulations.

As part of the statutory framework, certain services are excepted from the definition of "employment." Congress intended to relieve many students and the institutions employing them from the financial burden of paying FICA taxes, especially since the earnings are unlikely to impact a student's future eligibility for Social Security benefits. To implement its concerns, Congress specifically excluded from the definition of "employment" services performed by students in the employ of a college or university. For purposes of this student FICA exception, the amount of compensation received, the type of services performed and the place where the services are performed are immaterial. What is material is whether the facts involve a student who works or a worker who attends classes, i.e., whether the employee performs services incident to and for the purpose of pursuing or completing a course of study.

***United Stated v. Mayo Foundation*** – The United States District Court in Minnesota found that stipends paid to medical school residents are not subject to FICA tax. The

5

district court ruled that the residents were "students" eligible for the FICA exemption under Code Sec. 3121 (b)(10) on the grounds that (i) they had "enrolled" in the residency program to gain the knowledge and skills necessary to practice in a specialty area of medicine, (ii) admission was based on merit and academic success, and (iii) they regularly attended classes, lectures and conferences. Moreover, the court found that the residents were not attracted to the residency program because of the stipend or any expectation of employment after completing their training.

**State of Minnesota v. Apfel** – The United States Court of Appeals for the Eighth Circuit affirmed a district court decision that the State of Minnesota was not liable for FICA taxes on the stipend amounts paid to medical residents. More specifically, the district court granted summary judgment on behalf of the state on the alternative grounds that (i) the medical residents were not employees for purposes of Social Security coverage under a Section 218 Agreement and (ii) even if the residents were employees under the agreement's terms, they were excluded from coverage under the agreement's "student exclusion" which paralleled the broader student FICA exclusion.

In its analysis of the alternative position, the Eighth Circuit cited general FICA provisions in its determination that the student exclusion applies. More specifically, the Court focused not on the nature of the stipends, but focused instead on the nature of the residents' relationship with the teaching hospital. The Court stated that the student exclusion applies if the main purpose of the relationship with the hospital "is pursuing a course of study rather than pursuing a livelihood." Under those conditions, the Court stated that it would "consider [the resident] to be a student and [his/her] work is not considered employment." In essence, the Court extended the position previously recognized by the Service in Rev. Proc. 98-16. In other words, the amounts are paid not so much for or in connection with the performance of services. Instead, they are closer akin to disinterested grants to participants to enable them to complete their course of study-focusing on the experience to be gained by the medical residents and fellows rather than on any benefit to the teaching hospital.

**Scholarship or Fellowship Grants-** The long-standing position of the IRS as evidenced by its rulings is that scholarship and fellowship grants are not wages, and therefore are not subject to FICA taxation. As defined in the Treasury Regulations under I.R.C. Section 117, a scholarship or fellowship grant is any amount paid or provided for the benefit of an individual to aid in the pursuit of study or research. However, such amounts do not include amounts which represent compensation for past, present or future employment, represent payments for services that are subject to the direction or supervision of the grantor, or if such studies or research are primarily for the grantor's benefit.

**Substantial Quid Pro Test** - The Supreme Court developed the "substantial quid pro test" in *Bingler v Johnson*, 394 U.S. at 758, to ascertain whether an award is a scholarship or fellowship grant or a payment of compensation. The quid pro test examines whether the award is a disinterested act of the grantor or whether it is a bargained-for-consideration between the grantor and the recipient. The Court identified

6

a requirement of disinterest on the part of the grantor before an award is deemed a scholarship or fellowship grant.

***Primary Purpose Test*** - The courts through the years have also utilized the "primary purpose test" to determine whether particular awards qualify as scholarships or fellowship grants. Based on Treasury Regulation Sec. 1.117-4(c), the test involves an examination of the facts to ascertain the primary purpose of the grant. In making the determination of whether the grant constitutes a scholarship or fellowship grant, the courts have focused on whether the grant was intended to further the education and training of the recipient or to merely benefit the grantor. If the primary purpose of the grant is to benefit the grantor, the grant does not constitute a scholarship or fellowship grant.

**FICA Exemption of Research Fellows** - Under a series of ruling issued by the Service in recent years, the Service has agreed that participants in scientific research programs which are designed to improve the participants' skills as researchers are exempt from FICA. Under these rulings, the Service has recognized that the stipends paid to such persons are fellowships, and that the stipend payments are not in the form of payment for services within the meaning of section 117 (c) of the Code. In essence, the Service has recognized that the research fellows in these rulings are being trained and that the services which they perform are the platform upon which the training occurs.

## CONCLUSION

DOHC respectfully requests that the Service refund both the employer and medical resident and fellow portion of the FICA taxes that DOHC mistakenly treated as FICA wages. These payments were for services rendered by the medical residents and fellows that should have been exempt from FICA taxes pursuant to the court decisions in *United States v. Mayo Foundation* and *State of Minnesota v. Apfel,* and to the series of rulings regarding payments to research fellows. Additionally, DOHC maintains that stipends paid to its medical residents qualify as fellowship grants, having satisfied both the "substantial quid pro" test and the "primary purpose" tests. Based on these, DOHC and its medical residents and fellows are entitled to FICA tax refunds (plus interest) for each quarterly period from January 1, 2004 through March 31, 2005.